Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and the Honorable Court. Good morning. Please be seated. Well, we're left with only one case for argument today. Others have waived their argument. The case is 15-3174, Johnson v. Navy. Mr. Boyd, whenever you're ready. Thank you. Chief Judge, if you may, please, the court. It's a case about a whistleblower and a short suspension, and one might wonder why all this trouble, why all this time. Merritt Citizens Protection Board, Special Counsel, my colleagues, me, you, over a three-day suspension. You say in your brief that depending on the factual basis, notoriously disgraceful conduct can lead to disbarment. But what does that assertion mean other than that some facts might involve disbarment? I mean, things that aren't equated with notoriously disgraceful conduct can lead to disbarment. They could, of course. And I'm not suggesting that my client is going to be disbarred because of an event in 2010. No. But the stigma of this, this is a lawyer. This is a government lawyer. And charges like this should not be lightly made. What bothers me about this is the word notoriously. If the reprimand and the suspension had been for impropriety or lots of things, if it had been phrased differently, I wouldn't be bothered by it in the slightest. There are arguments, factual arguments, back and forth both ways. But it was at the least unwise on the part of your client to participate in the manner in which she did. But the notoriously disgraceful description seems so vague to me. And it seems to lend itself to such a broad spectrum that I'm disturbed by it. That's why we're here, Your Honor. If this were a case of jaywalking and a three-day suspension, it wouldn't be here. But this is a label because a suspension is a permanent record. It doesn't go away like a reprimand does after two years or so. It's in our personnel file. It carries a label. People reading the personnel file take a look at the suspension and the reason given for it. They don't spend 20 hours trying to analyze how this all came about. But is it our job to critique the choice of label? I mean, she did engage in a certain kind of conduct which was decided to be wrong, reprehensible. She was given a fairly minor penalty. And so is it for us to say, well, there must have been other labels that could have led to a three-day suspension and you used the wrong label? No, Your Honor, and that's exactly the point of distinction between our approach, the government, and the board. We're not asking the board in a whistleblower reprisal case to determine what is the appropriate label. This case started out, we found out through discovery, with a label of unbecoming conduct, a much more general, much more benign label. For whatever reason, the Navy chose at the point of issuance of a decision to bump it up to notoriously disgraceful. What we've argued to the board is that that is a suggestion of overreach, and the board's law opposes that argument in the Iris case and the one before that, I think the Madison case. If the agency overcharges conduct, it can be suggestive of an inappropriate motive. Here, whistleblowing reprisal. But we're looking at what they did, and they suspended her for three days, right? Yes, that's correct. So aren't we looking at whether or not that suspension under the standards of CAR, the strength of the evidence to support the action taken by the agency? Yes, Your Honor. Chief Judge, if you divorce the conduct as described in the specifications from the label on the charge, your approach is correct. But that's not the way civil service law works. In civil service law, you have a specification that supports a charge. In a normal case, I speak now of an adverse action. The Merit Citizens Protection Board looks to see if the agency sustains the charge through proof of the specifications and the conduct as described. That's why the label is so important in normal civil service law. And in whistler law, the nature of the action is still, it's called an adverse action even though it's a minor suspension. And the law requires that when a minor suspension is issued that the agency state the reasons for the action, give the employee due process rights to respond, and then in the decision state the reasons upon which the agency relies. The reasons are not necessarily the same as the facts or the circumstances. The reason for the suspension is notoriously disgraceful conduct. Which is then discussed at length. I mean, we know the conduct we're talking about. There was an investigation done. People were questioned, and we know, and the agency has outlined with great specificity, what it's talking about in terms of what the offensive, egregious conduct was here. So you're saying if the label weren't here, would we not be here? I would say that's probably true. The label is extremely important. It is not a minor point. This lady goes for the rest of her federal career labeled as an employee who received a suspension for otherwise undefined, notoriously disgraceful conduct. What you're saying, if I'm correct, is that the label itself is a form of punishment. It is. And that's why in the Ayers case and the Madison case before it, the board said when the agency cannot shore up the charges that it makes against the employee, in a whistleblower case, it's a sign of overreaching, and overreaching goes to the question of reprisal. And the board did not address this, unfortunately. What the board did was mischaracterize our argument by saying that we were somehow arguing that the prohibited personnel practice was in converting the charge from unbecoming conduct, which we found about in discovery, to notoriously disgraceful conduct, and we should have gone back to the Office of Special Counsel. That's an extraordinary statement. The board didn't offer any support for it, of course, but you don't go back to the Office of Special Counsel dealing with something you discover relating to the nature of the charging process that leads in the inference of reprisal. That's the board's obligation to resolve. I don't understand. Maybe I'm missing something about how things were done. I don't understand the argument you're making. When you went to the Office of Special Counsel, now I think you're telling us that in the absence of this phrase, you would not be contending that there was improper reprisal here based on whistleblowing. So it's the phrase that is the issue that you say that demonstrates the reprisal aspect. Did you raise that with the Special Counsel? Your Honor, if I understand your question, did we raise whether or not the case would have been brought to the Special Counsel had a different label been placed on it? If that's your question, the answer is no. No, no, no. My question is did you raise with the Special Counsel that this so-called reprisal here, I thought you had said to me earlier, if we were talking about a three-day suspension that was labeled something else, we would not be here. We are here because they used the phrase notoriously, whatever. So that's the basis for your alleging that this was retaliatory. Your Honor, no. And if so, did you raise that issue with the Special Counsel? No. Your Honor, what you raise with the Special Counsel is the personnel action. That's the suspension. That is what is the prohibited personnel practice. It's the suspension. Now, why the suspension was taken, the motivation for the suspension, whether the agency has clear and convincing evidence to support the suspension here for a notoriously disgraceful conduct is a matter that you litigate. The Special Counsel examines it. Then it goes to the Merit Systems Protection Board. All you raise with the Special Counsel is the action. Now, in my opening statement, I said – What action? When you say the actions, you say it doesn't matter. The label doesn't matter with respect to the Special Counsel. What matters is that they suspended her for three days? That's correct. But now you're telling us here that the suspension for three days would not have been something you would have appealed. It was really the gravamen of the harm to her and also the basis for your being able to argue that this was retaliatory was the use of this phrase, right? No. That's what I understood you to be saying. No, and I'm sorry if I haven't made myself clear. Okay. The action of suspending Mrs. Johnson could have probably was retaliatory no matter how it was labeled. Had it been labeled unbecoming conduct, it would have been no less retaliatory. The reason it's here, given the fact that it's a short suspension and all these resources, why is this so important to her, is not a suspension of three days where I use the example of jaywalking. That's not why we're here. The reason is because of the stigma. No, no, no. But I think we're just talking past each other. Putting aside the motivation for why she's deciding to appeal this and go so far, that's not an issue that I'm questioning here. We're talking about what the allegation is of retaliatory conduct. If this label weren't put on there and she had been suspended for three days based on the specificity of the conduct alleged, would you be here? I don't know. That's a tough question. Well, if you're not sure that absent the label, if you think that it may be that it's the label that demonstrates retaliation and that's the gravamen of your complaint of retaliation, then I suggest that that should have been put before the special counsel. That is one factor. The action itself would have still been retaliatory, whether the enormous investment of resources would have been made. You're telling us, though, that you could not raise the label before the special counsel. No. That's the first question I'm going to ask your opposing counsel. That's correct. You can't go to the special counsel on a label. Personnel practice is defined in 5 U.S.C. 2302b, and it doesn't include labels. So why does it include labels here? Why do you get to argue to us that the label is the basis for retaliation when you say you couldn't argue it there? Are the rules different? It is a question of how you determine whether or not the agency has met its clear and convincing evidence that it would have taken the action. It's a question of overreach. If the agency goes so far to charge a government lawyer with notoriously disgraceful conduct and they can't prove it or the board doesn't find that they proved it because perhaps the board didn't properly analyze it, that is a factor that goes into the analysis of the strength of the agency's case. If the agency can't prove the charge that it made, then under Carr and Geier, going way back. So I'm not going to press this much further. Let me ask you one question. Us versus the special counsel, and Judge Wallach has already indicated he's going to ask the government. If you have a basis for charging retaliation, if that's the basis that you're alleging retaliation here before us, how can it be that that's nothing that you would put before the special counsel? You say because I assume the answer is because the special counsel, an action for retaliation and whistleblowing is based on the personnel action that was taken. Either that personnel action is a three-day suspension or that personnel action is the title you put on the conduct. Whatever it is, it should have been the same in terms of the allegations you made to the special counsel and the allegations you made here. There's no difference. There's a difference in our argument. The action that was placed before the special counsel was a suspension of three days for notoriously disgraceful conduct, and we provided to the special counsel our arguments as to why there was no notoriously disgraceful conduct and why under the factors of this case, which all started out with Ms. Johnson complaining about what she felt was bullying by a contracting officer at the San Diego Naval Office, how this all got started. So you don't go to the special counsel and argue, or I wouldn't, special counsel doesn't have jurisdiction to deal with the characterization of charge. They have jurisdiction to deal with the suspension. Under Carr and Geier, under the comments in the Congressional History to the Whistleblower Protection Act of 1989, you take a look at elements that would suggest retaliatory motivation. Overcharging is one. Now that's about to get into my rebuttal time, but that's just one-third of our arguments here. The arguments have been briefed. If you have further questions about this, I'd be happy to respond. Why don't we hear from the other side now? Yes, ma'am. Thank you. We'll restore two minutes of rebuttal. So you know my first question already. Your Honor, if you could restate it for me, it would be helpful. Could Ms. Johnson have raised the propriety of charging her with notoriously disgraceful conduct before the special counsel as opposed to conduct unbecoming? Your Honor, I think this exhaustion issue has been a little bit unclear. I think what the board understood it to be is a concern that— You're not answering my question. I'm sorry. Could they have raised it in front of the office of special counsel? I believe they could, and I think they did in the sense of saying we think this action, which had a specific title, was retaliation. However, we are not involved in that process. The documents that were in front of the office of special counsel are not part of the record. We have one document in the record that shows them deciding to close the case. What's the difference between notoriously disgraceful and conduct unbecoming? Well, they are not defined in the table of penalties. I believe the agency chose notoriously disgraceful conduct because there was this element of the conduct that— When you say they're not defined, does that make them vague? I don't think so, Your Honor, because I think those words have— So what's notoriously disgraceful conduct as opposed to? I think the key is that it was well-known in the agency, that it was conduct that was undesirable, but it also had this quality of being well-known, and we described some of the— Why was it well-known? Well, I think because it was— Did Ms. Johnson tell everyone about it? No. I believe because the intern came back so shaken from this event and went in and spoke to her boss, and she had also spoken to a colleague first because she had been told not to tell anyone about this interview. So she talked to a colleague first who encouraged her to talk to her boss. What is the range of penalties for notoriously disgraceful conduct? The range, I think it goes up to removal. Yes, but what is the lower? The lower end, I think— It must go down to a suspension of three days or even less, perhaps. Yeah, I think it may go down to reprimand. I actually have it in my briefcase, but I don't have it right here at the podium. In other words, three days was within that range. A penalty for notoriously disgraceful conduct included something as relatively minor as a three-day suspension. Yes. What's the penalty for conduct unbecoming? I do not have that. I don't know that off the top of my head, but I do have the chart in my briefcase, Your Honor. Briefcase doesn't help at all. I'm sorry, Your Honor. Well, is this a matter of public record? Does the agency publish in its rules or whatever the kinds of conduct and the range of penalties associated with that conduct? Is that just in the record somewhere? I'm not aware of that, but I don't think—no, my understanding is no. But it exists. What does it exist as, an agency policy statement? Well, there must be a regulation, and I guess you answered the question earlier, that for notoriously disgraceful conduct or conduct unbecoming or anything else, there are ranges. Yes. There are specified ranges. That's correct, Your Honor. Don't you find it troubling that an employee of—a civil service employee of the United States can be charged with misconduct that's so vague that you can't describe it? Well, I think we can describe it, Your Honor. I mean, I think those words have plain meanings, and as I said— What does notoriously disgraceful conduct mean to me? Jumping in the fountain in front of the Capitol with an Argentine stripper. That's notoriously disgraceful conduct. Well, Your Honor, this conduct was fairly unusual. I understand what the court is feeling, but the record reflects that this incident was quite extraordinary. The intern described feeling very intimidated during the interview and frightened. Clearly unlawyerly. Clearly. She perceived Ms. Johnson as trying to get her to admit that Mr. Browley was abusive, although she felt this was untrue. She said the questioning made her feel dirty, and she felt trapped throughout the interview. She thought about jumping out of the car. She said in her statement, she describes that her heart was still beating fast from this experience when she returned to the office. Why did the Navy switch from conduct unbecoming to notoriously disgraceful? My understanding is that they felt it described the circumstances better because this had become so well known in the office, and that that was becoming a problem. When she was contacted the day after this event, Ms. Amster, Ms. Johnson's boss, had already heard office gossip about a kidnapping. Ms. Amster reported that a buyer and a contracting officer had asked her about the incident. So not just the employees, but other people beyond the scope of the employees had heard about this. And so I think they were trying to capture that aspect of this behavior in the charge. Can you just point me where is, I can't find it now in the appendix, the actual decision that refers to notoriously the actual final decision? The final decision? I mean, is that where, I mean, I'm trying to figure out in just all this paper I have in the appendix, the progress. Because first they charged her with five day suspension or whatever. So I'm, and I'm looking for those words. For the, for the words where they. Call this notoriously. Oh, in the charge. Well, in the charge and in the decision. Yeah. The suspension proposal is on page 26 of the appendix. Okay. And so we're just okay. Okay, I was just wondering if they had cited any regulation or whatever. And then the final decision. This was a notice proposal. And the final decision is. P34. The MSP. The MSP final decision. No, no, no. The agency agency's final decision. Okay. Looking at the appendix I'm not sure that that made it into the appendix. Well, I have a final decision on the proposed five day suspension, but then they changed it to three. So I'm not following. Where they. Well, nevermind. I mean, I want to take your time. I just wanted to see the context in which that term was used. I'm sorry. All right. Now. Just to. Go back to this exhaustion issue. I think. I said earlier that I believe this was all present. All was and could it could have been and was presented to the office of special counsel. If the issue is just whether. Just that this charge and. That this charge was retaliatory action. But to the extent that Mr. Johnson is really arguing that the fact that the agency started out with one charge and then edited their draft proposal, which is what they learned about in discovery. And what I think the board was talking about was also a separate retaliatory action. I think that is what the board was addressing and saying, if they're making that argument, that would require separate exhaustion, a separate exhaustion process. And I think that's supported by the case law. I know Miss Johnson has pointed to the Briley case in her papers to try to make the contrary argument. But I think that court that that case actually supports the fact that exhaustion would be required for that claim because it refers to the Mincemeyer case, which distinguishes. And it says that in that case. They contrast that situation where you're bringing a separate claim of an action of retaliation and say, you do have to exhaust in that case with the Briley case where she's just filling in details about the actions for which she claimed she was retaliated against. So I think if that's what the board, I think if that's what Miss Johnson is arguing, there is an exhaustion problem. Can I ask you, I mean, it seems like if one were just listening to the discussion that's going on this morning, it seems to me that it's possible that one could say, well, what's really at stake here, the issue, the charge of retaliation and the proof of the two is based on the use of this, these words, not that they took the three day suspension action against her, but the fact that they use these words. And if they had used really horrible words, not these words, but something even worse to describe her action, then is it possible that one could say, well, the fact that they took a three day suspension, okay, they can justify that perhaps on the conduct. But the evidence of the retaliation here is based on the fact that the agency has used extreme words that they've never used in connection with any other suspension or adverse action. And that proves they really wanted to go after this person. Is that a legitimate case? Is there such a case that you've ever seen? Supposing they had said treasonous conduct? Well, I think the court is right earlier that the way that the court has said that these are supposed to be looked, this issue is supposed to be looked at in a whistleblower case is in the analysis that the court adopted in Carr. And so you do look at how the conduct matches with the charges in the sense of you look at the weight of the evidence. And if the charges were extreme, presumably the weight of the evidence wouldn't favor the agency in that case. But I don't think there's a separate analysis. I think any sort of suggestion that there's some sort of separate analysis or that the agency had to prove its charge is contrary to the analysis that this court has said applies in the Carr case. Well, are you familiar with the charge of petty treason as opposed to high treason? Not in detail, Your Honor, but I can imagine. Well, it's not treason against the state. It's treason against someone lower than the state, for example, your agency, although in the old days it was treason against your parent, for example. So supposing they charged her with petty treason and suspended her for three days? I think in that case, this court has said that the Carr analysis would apply. And I don't think there's a problem with that because I think this weighing of the evidence that is supposed to be done can address that situation if the charge is too great. If the charge is too great, the evidence is not going to weigh in the agency's favor. I think if you have a situation where the agency has to prove its charge and it goes beyond the weighing of evidence, that creates real problems in cases like this case in particular, where the board and the court does not have jurisdiction over the underlying personnel action. So you're creating a situation where the agency would have to prove the charge in a case where the board and this court doesn't have jurisdiction over the charge. And that seems very incongruous. So I think the Carr analysis does deal with the problem. And I understand that the court is reacting to that language. But I do think, even so, the conventional analysis deals with that by looking at the weight of the evidence. And if the weight of the evidence doesn't support it, that problem is going to be addressed. And I think here the weight of the evidence is very clearly supportive of the charge. I've reviewed some of the reasons why this is notorious. I can go on with this description of what was so problematic about this conduct. You can take solace from the classic definition of adverse possession, which is that it must be open, notorious, and adverse. And it doesn't mean that everyone has to know about it, just the neighbor. Certainly, Your Honor, that's true. Maybe notorious doesn't require broad knowledge. But even if it did, I mean, the facts are, in this case, that a buyer and a contracting officer had asked Ms. Johnson's boss about the incident. So it was widely known. Can I ask you, a lot of the briefing here seems to be on this maybe legal fight about whether or not you use car, and that car is something different than what Mr. Breuder is advocating in terms of the analysis and the review. How does that make any difference, at least in the context of this case, in terms of what we have to evaluate? The strength of the agency's case, looking at everything they looked at, how would that be different than if we applied another standard or another analytical? Well, as I understand it, what he is asking or saying is that the board should have looked at whether the agency proved its charge and that this court should consider that. And I think that is different than the car standard because I think the car looks at the weight of the evidence rather than coming to a final conclusion on the charge. And I think that's a problem, both because you have the agency having to handle an adverse, basically prove up a whole adverse action case in a whistleblower context, but it's also a problem because there are going to be some cases where the board and this court don't have jurisdiction over the adverse action because it's so small, like a three-day suspension. I just don't understand. I'm trying to really envision what the distinction is between the application of the factor in car and the regular review of the MSPB. If you're evaluating the strength of the evidence, that includes looking at whether or not the personnel action taken was supported. As a practical matter, can you just tell me in this case what the difference would be in terms of what we were looking at? My understanding, Your Honor, is it's a slightly less – and this is – Well, tell me about this case. What would we be – what question would we be asking in this case about these facts as opposed – applying the two standards? I don't think it would develop much differently because I think the agency's evidence is fairly clear. But I think it may create a situation where the agency has to approach a case as if it is defending the adverse action on the merits, and it might be a more in-depth process. I think the weight of the evidence is a slightly more preliminary assessment. Granted, that's not, I don't think, made explicit in case law, but it seems like that's what the court is doing in these cases, that it's not quite making a final determination on the merits of the adverse action. Anything further? Thank you. Thank you, Your Honor. Next time, bring your briefcase. I'm sorry, Your Honor. Can you just take a minute to answer the – if you have an answer to the last question I asked about what, in your view, would have been different in terms of how this case – Yes. It's – it really goes to the heart of this case. This is a very important issue. There is no distinction. CAR, in terms of what the agency has to prove as part of the CAR analysis, CAR was not some real new statement of law. All CAR did was affirm or incorporate by reference. Okay. You're making your legal argument about why CAR should be as strong as the other one. My question is you allege that they applied the wrong standard here, right, or not? They did an incomplete analysis because they did not analyze the impact of failure to prove the charge, notoriously disgraceful conduct. That's an incomplete analysis. Under the Ayers case, the board has said that in a whistleblower case, if the agency overcharges, can't support its charges, that's a sign of overreach. That's one factor – only one factor. There are other factors that suggest whistleblowing requires it. That's the Ayers case. And that case had a predecessor. And if I may, if you will indulge me for just a moment, I take you back to 1989 when the Whistleblower Protection Act was before Congress. And the debate was on the floor of Congress. The act had been vetoed once by President Reagan. It was up again. And Congressman Sikorsky, March 21, 1989, Congressional Record House side, page 5033, talked about the clear and convincing evidentiary standard, which is what we hear about. And he said that it's a very high standard to prove for the government because, first of all, you don't get there unless the action is tainted. We've already agreed. Everybody agrees that this action was tainted. And secondly, the government holds all the cards, and here I'll quote a statement, including the drafting of the documents supporting the decision. The drafting of the documents supporting the decision. And that singularly important document is the proposal. The proposal is what the employee defends against. So what has occurred here is the agency holding the cards with a high standard to prove has given a proposal stating that this individual, committed notoriously disgraceful conduct, and whether you want to talk about eminent domain or whether you want to talk about my clients who appear with some regularity in the newspapers, that's notorious. But the issue here, I'm sorry, I know we're way above time, but I'll just ask one more time in one different way. When we're talking about whether they've got a long list of what went down, who said what to who and what happened, and if we conclude this is substantial evidence under any standard or whatever to support that that actually happened, you're saying that we also have to evaluate whether or not a label that's also contained in the letter is supported, right? I mean, that's got to be your case. It is my case. And is there anything, is there any case that supports that? Is there a case that says you, you, you. Is there something other than the basis for the personnel action and looking at the personnel action, which is a three-day suspension, that we're really talking about? There is no board case, no Federal Circuit case of which I'm aware, no case from its predecessor court that I'm aware of that has ever suggested that you can divorce a charge from the specifications supporting the charge. You have to prove the charge. Now, you can give a very general charge. Conduct unbecoming is fine. And maybe that would have been applicable here. Maybe. I'm not conceding it, but it's possible. But the agency chooses the charge. You can't sever the charge in the specifications. The specifications support the charge. If you don't have a charge, you don't have a case against a Federal employee. There has to be a charge. There has to be a reason that's given to the employee. The reason is called the charge. Now, does the board break it down like that? Does the Federal Circuit break it down like that? No, but that's the way the law is practiced. We've exceeded your time. Thank you. Then Clause 5 is the case as submitted. Please have proceedings.